# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0346
Filed April 29, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Avery Anthony Morris,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Muscatine County,
The Honorable Thomas G. Reidel, Judge.

———————————

**AFFIRMED**

———————————

Kent A. Simmons, Bettendorf, attorney for appellant.

Brenna Bird, Attorney General, and Anagha Dixit (until withdrawal) and
Louis S. Sloven, Assistant Attorneys General, attorneys for appellee.

———————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Sandy, J.

**SANDY, Judge.**

The facts of this case are straightforward but contested in their characterization. An encounter that began with concern for two unattended infants concluded with a physical altercation behind a gas station. After officers informed Avery Morris he would be placed under arrest, he retained his grip on the stroller containing his infants despite repeated commands to release it. What followed was a brief but forceful struggle that resulted in injury to both officers. The jury determined that conduct satisfied the elements of interference with official acts resulting in bodily injury. On this record, that determination is supported by substantial evidence. Accordingly, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

The State charged Morris with five offenses arising out of a single incident: one count of disarming or attempting to disarm a peace officer of a dangerous weapon, two counts of child endangerment, and two counts of interference with official acts resulting in bodily injury. A jury trial was held in February 2025. The jury acquitted Morris of the disarming-a-peace-officer and child-endangerment charges but found him guilty on both counts of interference with official acts resulting in bodily injury under Iowa Code section 719.1(1)(c) (2024).

On November 24, 2024, store employees at a Muscatine gas station observed Morris both inside and around the store over an extended period while his two infant daughters remained in a stroller near the entrance. Employees testified the children were unattended at times, prompting concern among staff and customers, some of whom checked on the infants and adjusted their blankets. However, Morris maintained he remained just outside the store within view of the children while attempting to arrange

transportation and periodically monitoring them through the store's windows.

Police were dispatched following a report that a man with small children was going in and out of the store and possibly consuming alcohol. Corporal Matthew Fowler responded and located Morris behind the store with the infants. Fowler attempted to identify Morris and investigate the report. During this interaction, Morris initially communicated nonverbally and appeared to indicate he could not hear, prompting Fowler to write questions. The officer later concluded Morris could hear after observing his responses to the children.

As the encounter progressed, a second officer, Andrew Fry, arrived to assist. By that time, a woman associated with Morris had arrived, and officers arranged for the children's mother to come to the scene. After additional interaction, officers decided Morris would be placed under arrest. How the arrest was initiated is disputed in the record. Evidence presented at trial showed the officers moved to physically restrain Morris while he was still holding the stroller containing the infants. The officers testified Morris failed to comply with commands to release the stroller and resisted their efforts. Morris testified he was attempting to ensure the children were safely transferred to their mother before releasing his grip.

A physical struggle ensued. The officers pulled Morris's arms while attempting to secure him, and all three fell to the ground within seconds of the initial contact. During the altercation, the children were moved away from the scene. The struggle continued until officers deployed a taser and finally secured Morris in handcuffs. Both officers sustained minor injuries during the encounter.

Following trial, the district court entered judgment on the jury's guilty verdicts for two counts of interference with official acts resulting in bodily injury. The court sentenced Morris to concurrent jail terms of 270 days on each count, with a portion suspended, and placed him on probation. Morris appeals, challenging the sufficiency of the evidence supporting his convictions for interference with official acts.

## STANDARD OF REVIEW

We review Morris's challenge to the sufficiency of the evidence for the correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We defer to the jury's verdict and will uphold the verdict if supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* When conducting this review we construe evidence "in the light most favorable to the State," which includes any "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted).

## DISCUSSION

Morris challenges the sufficiency of the evidence supporting his convictions for interference with official acts resulting in bodily injury. His argument focuses on the premise that he did not knowingly resist or obstruct the officers, but instead was attempting to ensure the safety of his infant children before complying with arrest. The record, when viewed in the light most favorable to the verdict, does not support that claim.

The jury was instructed that the State was required to prove Morris knowingly resisted or obstructed a peace officer performing a lawful duty and that his conduct resulted in bodily injury. Morris does not dispute the

officers' status or that they were engaged in official duties. The dispute centers on whether his conduct constituted knowing resistance or obstruction.

The record contains substantial evidence from which a rational jury could conclude that Morris's conduct qualified as such. Officers made clear to Morris that he was going to be placed under arrest. The evidence shows Morris did not submit to that authority. Instead, he maintained his grip on the stroller after repeated commands to release it, even as officers attempted to secure his arms. The situation escalated immediately upon the officers' attempt to take him into custody, culminating in a physical struggle that brought all three individuals to the ground within seconds.

Although Morris characterizes his conduct as protective rather than resistive, the jury was not required to accept that explanation. *See State v. Jones*, 967 N.W.2d 336, 343 (Iowa 2021) (explaining a jury is "not required to accept the defendant's version of the events" (citation omitted)); *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (stating it is "for the jury to decide which evidence to accept or reject"). The evidence permitted the inference that, regardless of his stated concern for the children, Morris chose to maintain control of the stroller in defiance of direct commands, thereby preventing officers from effectuating the arrest. Even under Morris's own account, he intentionally held onto the stroller until he believed the children were secure. That deliberate choice—made after being informed of the impending arrest—supports a finding that he knowingly impeded the officers' efforts.

The physical nature of the encounter further supports the verdict. Testimony established that once officers initiated the arrest, Morris did not disengage but instead remained physically entangled, requiring officers to

forcibly separate him from the stroller and bring him to the ground. The struggle did not end there. Officers testified that Morris continued to resist on the ground until a taser was deployed and he could finally be restrained. From this sequence, the jury could reasonably conclude that Morris's conduct went beyond passive noncompliance and constituted active resistance.

The standard on appeal does not permit reweighing competing narratives. "It is not our place to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *Brimmer*, 983 N.W.2d at 256 (cleaned up). Here, the record shows Morris was given commands, failed to comply, and engaged in a physical struggle that resulted in injury to the officers. That is sufficient for the jury to conclude that Morris knowingly resisted or obstructed the officers' attempts to place him under arrest. Finally, the bodily-injury element is supported by the uncontroverted evidence that both officers sustained injuries during the altercation. The jury could reasonably attribute those injuries to Morris's resistance during the arrest.

In sum, viewing the evidence in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that Morris knowingly resisted or obstructed officers in the performance of their duties and that his actions resulted in bodily injury. The convictions are therefore supported by substantial evidence and must be affirmed.

**AFFIRMED.**